### SCHULTZ et al. v. FITZGIBBONS.

(Supreme Court, Appellate Division, First Department. January 10, 1913.)

ACCOUNT STATED (§ 19\*)—ACTIONS—SUFFICIENCY OF EVIDENCE.

In an action on an account stated, evidence *held* sufficient to make out a case for plaintiffs in the absence of any opposing proof, and hence a verdict for defendant was unwarranted.

[Ed. Note.—For other cases, see Account Stated, Cent. Dig. §§ 91–93; Dec. Dig. § 19.\*]

Ingraham, P. J., dissenting.

Appeal from Trial Term, New York County.

Action by Martin M. Schultz and others, copartners, doing business under the name of Martin M. Schultz & Co., against Mary J. Fitzgibbons, as administratrix of James B. McMahon, deceased. From a judgment for the defendant and an order denying a new trial, plaintiffs appeal. Reversed, and new trial ordered.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, MILLER, and DOWLING, JJ.

Stephen Van Wyck, of New York City, for appellants.
John H. Durack, of New York City, for respondent.

DOWLING, J. Plaintiffs bring this action to recover the sum of $8,743, with interest upon an account stated on December 15, 1909, between them and James B. McMahon, now deceased. The answer contains a denial of the statement of any account between the parties, and then, as a separate defense, after repeating the denial, sets up an alleged agreement between McMahon and one Alexander Clark, made on or about December 15, 1909, by which, in consideration of the transfer to him of a certain insurance policy, the latter "would assume the payment of the indebtedness described in the complaint herein and would pay the same," and a further agreement by decedent with plaintiffs (who were advised of the arrangement with Clark) that they "would then and there release the said decedent from any and all obligations under the alleged indebtedness set forth in the

complaint herein, and in place thereof would accept as a debtor of the said indebtedness the said Clark in place of the said McMahon."

The statement of account received in evidence is as follows:

Duplicate.              Statement.

M   Account No. 9                              Chicago, Dec. 14th, 1909.

In account with

Martin M. Schultz & Co.

| 1909 | | | | | | Dr. | Cr. |
|---|---|---|---|---|---|---|---|
| June 12 | Loss | 2000 | July | Oil | .............................. | 1908.00 | |
| July 24 | " | 500 | Sept. | " | .............................. | 1167.00 | |
| " 31 | " | 500 | " | " | .............................. | 1795.00 | |
| " 31 | " | 500 | " | " | .............................. | 1483.00 | |
| Aug. 18 | " | 1000 | " | " | .............................. | 2390.00 | |
| Dec. 14 | By Balance | | | | | | 8743.00 |
| | | | | | | 8743.00 | 8743.00 |
| Dec. 15 | To Balance | | | | | 8743.00 | |

O. K.      Chgo. Dec. 15/09
   J. B. M.            J. B. M.

It was established (and not sought to be controverted) that the initials "J. B. M.," twice signed to this paper, were in the handwriting of McMahon. He was a business man, and vice president and general manager of N. K. Fairbanks & Co., with whom he had been associated for 28 years. Moritz O. Korff, a disinterested witness, and who had been acquainted with him for 20 years, testified that he saw McMahon at the hospital in Chicago in December, 1909, every day during his stay in the city; that McMahon told him he had an account with Martin M. Schultz & Co. (the plaintiffs), and was indebted to them, and asked the witness to go to the firm's office at the Board of Trade Building, and see Mr. Schultz that he might instruct the bookkeeper to send him his account. This Korff did, telling them as the reason that McMahon was going to New York shortly, and wished "to check matters up." He reported his visit to McMahon, who after several days told him he had not yet heard from the firm, and asked him to call there again and urged the sending of the account, which Korff did. On December 16, 1909, when Korff called at the hospital, McMahon handed him a paper, being a duplicate of the statement above set forth, and said to him that Schultz had visited him the day before; that this was the statement he had received from Schultz of his account; that he had checked it up; that the $8,743 which appeared thereon was "a nice amount for him to owe," and queried "How am I going to make that up?" The cross-examination of this witness did not vary his testimony in the slightest degree, but, on the contrary, made certain the identity of the paper shown him by McMahon as the duplicate statement of account, and that it referred to account No. 9 and showed a debit balance due thereon of $8,743. Martin M. Schultz testified without objection that he saw McMahon on December 15, 1909, in his room at the hospital in Chicago, that he had with him a statement of account between McMahon and his firm, and that the paper in evidence was identical therewith. Further he was not allowed to go because of objection raised by defendant. The nurse

in attendance on McMahon at the time testified that Schultz had visited McMahon at the hospital about December 15, 1909. Officials of N. K. Fairbanks & Co., who had long been associated with McMahon, identified the initials on the statement of account as being in his handwriting.

As against this proof, the defendant sought to establish its defense of an assumption of the debt of McMahon by Clark, but utterly failed so to do. The only other testimony was that of defendant's attorney that on a trip which he made to Chicago in the interest of the estate plaintiffs failed to mention or urge their claim.

Upon this record, I am convinced that the verdict for the defendant was against the weight of evidence. McMahon had no business relations with plaintiffs which would have justified or required his certifying to the correctness of the account save as a customer, owing them moneys the amount of which he was desirous of learning and having fixed and determined. He was ill, evidently seriously so, for he died some two months thereafter. His desire for a statement of his account, as repeated to Korff, was natural. He knew nothing of plaintiffs' books or affairs, and therefore there was no pretext under which he could have initialed the account as correct unless it was his own, and unless account No. 9 was his individual account, as Korff testifies and as the circumstances sufficiently demonstrate. While Schultz could not testify to his personal transactions with deceased, his visit to McMahon in the hospital is shown by him and corroborated by the nurse. This followed the requests to Korff by McMahon to obtain the account, and is followed by the production of the account by McMahon to Korff and the confirmation of the balance shown by it, together with the production from plaintiff's possession of the duplicate, with its correctness certified by McMahon himself. There is nothing suspicious or furtive about the transaction in any way. There is nothing improbable in the testimony of the witnesses, nor anything to impugn their veracity or good faith. There was nothing about the statement of account to render its admissibility doubtful as the learned trial justice seems to have thought, and his expressed reluctance to receive or give weight to which must have had its effect upon the jury. In any event, plaintiffs had made out their case, and, in the absence of any opposing proof on behalf of defendant, the verdict for the latter was unwarranted.

The judgment and order appealed from should be reversed, and a new trial ordered, with costs to appellant to abide the event.

McLAUGHLIN, LAUGHLIN, and MILLER, JJ., concur.

INGRAHAM, P. J. I dissent. I think, considering the nature of the transaction and the entire failure of the plaintiffs to prove that the defendant's intestate ever had any transactions with the plaintiffs, that there was a question of fact for the jury, and their verdict should not be disturbed. The action is on an account stated. The account on its face does not show that it was an account against the decedent; and there is no evidence that the decedent ever had any transaction of the kind specified in this account with the plaintiffs. It might well

be that this account was one which involved transactions for which the decedent was not personally liable, but which it was to the interest of the plaintiffs to have him mark correct. To justify a recovery as of an account stated, it must appear, I think, on the face of the account, that by approving it the person against whom there is a balance admitted the correctness of the balance due from him. The mere fact that he wrote "O. K." on this account and signed his name was not, as I view it, an admission that he was the one personally liable for the balance found due, as there was nothing on the face of the account that indicated that fact. The plaintiffs might easily have substantiated this claim by showing that they had transactions with the defendant's intestate, or on his account, which were represented by the balance that on the face of the account was due from somebody so as to connect this account with the decedent's business; but I do not think there was on the face of this account any admission that the decedent was liable to pay the balance due, and that fact was not supplied by other evidence.

I therefore think the judgment should be affirmed.